UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN COSTA DEVAULT,

     Plaintiff,

v.                                            Case No:  6:15-cv-135-Orl-37TBS

HOLLY ISDALE,

     Defendant.

_____

## ORDER

     This case comes before the Court on Defendant Holly Isdale's Motion to Compel Discovery and Plaintiff's Response and Opposition to Defendant's Motion to Compel Discovery (Docs. 36, 39).   The motion is due to be denied.

     Defendant Holly Isdale is both an attorney admitted to the New York State Bar, and the founder and principal of a wealth management company (Doc. 1, ¶¶ 13-14).   In 2011 she was engaged by a privately held corporation (the "Company") to conduct an optional Estate Review Program ("Program") for its shareholders (Doc. 36 at 1).   For those shareholders who wished to participate, Defendant agreed to provide a comprehensive review of their financial picture, including estate, financial, and insurance planning (Id.).   Defendant promised the shareholders that the information they gave her would be "confidential and will not be shared with anyone unless you specifically agree to share that information … I will not share information among family members without your prior consent."   (Doc. 2-1 at 1-2) (emphasis in original).   Plaintiff Megan Costa DeVault and her then husband, Nathan DeVault were shareholders in the Company who participated in the Program (Id.).

Plaintiff and Defendant communicated about legal, professional, financial, and estate planning matters (Doc. 2, ¶¶ 22-24).   Defendant requested and was given confidential and privileged information concerning Plaintiff and Nathan (Id., ¶ 27). Plaintiff also authorized Defendant to consult with Plaintiff's attorneys, financial planners, bankers and insurance consultants for purposes of estate and financial planning (Id., ¶ 29).   During this period, Defendant told Plaintiff the Company stock was jointly owned by Plaintiff and Nathan and that re-titling of Plaintiff's portion of the Company stock was unnecessary (Id., ¶ 33).   Plaintiff relied on this advice and did not re-title her stock (Id., ¶ 34).

In 2013, Plaintiff and Nathan commenced dissolution of marriage proceedings which culminated in a martial settlement agreement (Doc. 36 at 2).   In the agreement, Plaintiff relinquished 204 shares of Company stock to Nathan and the parties agreed that they jointly owned 744 additional shares (Doc. 36 at 2).   Plaintiff alleges there were several reasons for this outcome including that Defendant counseled and represented Nathan adversely to Plaintiff in the dissolution of marriage, Defendant gave Plaintiff bad financial advice, and Defendant used Plaintiff's confidential information to disparage her (Id., ¶¶ 37, 47).   Plaintiff brings this action for breach of contract, breach of fiduciary duty, legal malpractice, and professional negligence (Id.).   She alleges in part that Defendant's actions caused her to incur substantial attorney's fees related to the Company stock in the dissolution of marriage case which she now seeks to recover from Defendant (Doc. 36 at 2).

Defendant propounded requests for production to Plaintiff seeking, *inter alia*, Plaintiff's attorney's entire file for the dissolution of marriage case, plus the entire file for any attorney who represented Plaintiff "during the relevant period."   (Doc. 39-3 at 3-4).

Plaintiff objected based upon the work product and attorney-client privileges (Id.).

Plaintiff has produced a privilege log; responsive, non-privileged documents; and a

summary of her legal fees allocated to her dispute with Nathan over the Company stock

(Doc. 39 at 4). The pending motion concerns the following discovery requests and

responses:

**Defendant's Request for Production, No. 1**:

A copy of the entire original file related to Plaintiff from any attorney or
law firm that represented Plaintiff in Plaintiff's divorce proceedings with
Nathan DeVault, including but not limited to correspondence, pleadings,
orders, discovery, interrogatories, requests for admission, deposition
transcripts, notes memoranda, settlements, phone messages, emails,
invoices and bills.

**Plaintiff's Response**:

The plaintiff objects to this request as being grossly overbroad both in its
temporal scope and subject-matter. The plaintiff further objects to this
request as it seeks materials that are not relevant to the issues in this
proceeding and is not calculated to lead to the discovery of admissible
evidence. Likewise, the plaintiff objects as this request calls for
materials which are protected by the work product and attorney-client
privileges and will provide a privilege log upon production if necessary.
The plaintiff will produce non-privileged responsive documents, if any,
to the extent such documents are not accessible by public record.

**Defendant's Request for Production, No. 3**:

A copy of the entire original file related to Plaintiff from any attorney or
law firm that represented or was engaged by Plaintiff during the relevant
period, including but not limited to correspondence, pleadings, orders,
discovery, interrogatories, requests for admission, deposition
transcripts, notes, memoranda, settlements, phone messages, emails,
invoices and bills.

**Plaintiff's Response**:

The plaintiff objects to this request as being redundant and grossly
overbroad in its subject-matter. The plaintiff further objects to this
request as it seeks materials that are not relevant to the issues in this
proceeding and is not calculated to lead to the discovery of admissible
evidence. Likewise, the plaintiff objects as this request calls for

> materials which are protected by the work product and attorney-client
> privileges and will provide a privilege log upon production if necessary.

(Doc. 39-3 at 3-4).

Plaintiff has not expressly waived the work product or attorney-client privileges. But Defendant argues, Plaintiff implicitly waived these privileges by making her dissolution of marriage case a central issue in this litigation (Doc. 36 at 2).   Defendant asserts that she needs the entire dissolution of marriage file in order to determine whether there are factors in addition to those alleged in the complaint that might have caused Plaintiff to enter into the marital settlement agreement with Nathan (Id.).

In her FED. R. CIV. P. 26(a)(1) initial disclosures Plaintiff listed her divorce attorney as a person who "may have discoverable information related to defendant's conflicted involvement and noncooperation in the divorce litigation between plaintiff and Nathan DeVault as well as the resulting damages to plaintiff."   (Doc. 39-1 at 2).   Plaintiff also stated that her divorce attorney's "billing statements and summaries" are documents that may support her computation of damages (Id., at 4).

Federal Rule of Evidence 501 provides that "the privilege of a witness … shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."   Defendant removed the case from state court to this Court based upon the existence of diversity jurisdiction (Doc. 1). When the Court's jurisdiction is based upon diversity, state law controls on the substantive issue of attorney-client privilege and federal law controls on the procedural issue of work product privilege.   Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc., 300 F.R.D. 590, 593 (S.D. Fla. 2014).

The attorney-client privilege is the oldest privilege recognized by the common law. United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).   It belongs to the client, who may waive the privilege explicitly or implicitly.   Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994) *cert. denied*, 513 U.S. 1110 (1995).   In Florida, the attorney-client privilege gives the client the "privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client."   Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So.2d 1021, 1022 (Fla. 4th DCA 1998) (quoting § FLA. STAT. § 90.502(2)).

Federal law governs Plaintiff's assertion of the work product privilege.   Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 698-700 (S.D. Fla. 2007).   The work product privilege was recognized in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393 (1947), where the court said "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."   Rule 26(b)(3)(A) and (B) address the privilege and provide:

> (A) *Documents and Tangible Thinks*.   Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent).   But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*.   If the court orders discovery of those materials, it must protect against disclosure

> of the mental impressions, conclusions, opinions, or legal
> theories of a party's attorney or other representative
> concerning the litigation.

"[W]aiver of the attorney-client and work-product privileges is not favored in Florida." <u>TIG Ins. Corp. of Am. v. Johnson</u>, 799 So.2d 339, 341 (Fla. 4th DCA 2001). Ordinarily, a client must clearly communicate the intent to waive the attorney-client privilege. <u>First Union Nat. Bank of Fla. v. Whitener</u>, 715 So.2d 979, 984 (Fla. 5th DCA 1998). When a client does waive the privilege regarding some matter, the waiver is limited in scope to communications concerning that matter. <u>Alliant Ins. Servs., Inc. v. Riemer Ins. Group</u>, 22 So.3d 779, 781 (Fla. 4th DCA 2009); <u>Courville v. Promedco of Sw. Fla., Inc.</u>, 743 So.2d 41 (Fla. 2nd DCA 1999).

Florida courts recognize that a client can implicitly waive the attorney-client privilege. In <u>Savino v. Luciano</u>, 92 So.2d 817, 819 (Fla. 1957) (which involved the accountant-client privilege), the court explained: "And when a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist, in pretrial discovery proceedings, that the matter is privileged." <u>Id.</u>

Another Florida court said: "If a party 'has injected into the litigation issues going to the very *heart* of the litigation,' such party cannot avoid discovery into such issues by invoking the attorney-client privilege." <u>First S. Baptist Church of Mandarin, Fla., Inc. v. First Nat. Bank of Amarillo</u>, 610 So.2d 452, 454 (Fla. 1st DCA 1992) (quoting <u>Home Ins. Co. v. Advance Mach. Co.</u>, 443 So.2d 165, 168 (Fla. 1st DCA 1983)). A third Florida court finding that a client can waive the attorney-client privilege by injecting an issue into the case that requires the disclosure of otherwise privileged communications said:

> Although it is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege, *see* Savino v. Luciano, 92 So.2d 817, 819 (Fla. 1957), the general and we think controlling rule is that the attorney-client privilege is not "waived by bringing or defending a suit."  Burlington Industries v. Exxon Corporation, 65 F.R.D. 26, 35 (D. Md. 1974).  The attorney-client privilege is of course "designed precisely to enable people to bring and defend lawsuits. Consequently, if the mere bringing of a lawsuit waived the privilege, it would have little meaningful existence."  Connell v. Bernstein-Macaulay, Inc., 407 F.Supp. 420, 422 (S.D.N.Y. 1976).

Choice Restaurant Acquisition Ltd. v. Whitley, Inc., 816 So.2d 1165, 1167 (Fla. 4th DCA 2002).

Plaintiff did not waive the attorney-client and work product privileges simply by bringing this lawsuit.   She also did not waive a privilege by including attorney's fees from the dissolution of marriage case in her damage claim.   Nothing has been presented to suggest that the amounts Plaintiff paid her lawyer for legal work relating to the marital settlement agreement cannot be broken out and proven without resort to privileged communications.   Plaintiff and Nathan are the parties to the settlement agreement. Defendant is free to ask both of them what factors they considered during the negotiations, as well as how they evaluated and weighed each of those factors. Defendant can also discover the written and oral communications between the attorneys representing Plaintiff and Nathan.   There is no evidence that Plaintiff intends to use privilege as both a shield and sword as would be the case if she attempted to disclose favorable communications with her attorney while at the same time, insisting upon the protection of the privilege for damaging communications.   While the presentation of Defendant's case might be aided if she had access to Plaintiff's confidential

communications with her former attorney, that is not a sufficient reason to find a waiver of the attorney-client or work product privileges.   And, Defendant did not attempt to make the showing required by FED. R. CIV. P. 26(b)(3) to discover work product privileged information.[1]   Accordingly, Defendant Holly Isdale's Motion to Compel Discovery is **DENIED**.

      **DONE** and **ORDERED** in Orlando, Florida on October 26, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

[1] Even if the Court had found a waiver, it would be limited to the attorney-client privilege and then, only to communications concerning the Company stock.   Defendant's request for the file for "any attorney or law firm that represented or was engaged by Plaintiff during the relevant period, including but not limited to correspondence, pleadings, orders, discovery,  interrogatories, requests for admission, deposition transcripts, notes, memoranda, settlements, phone messages, emails, invoices and bills," is clearly overbroad (Doc. 39-3 at 4).