UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEGAN COSTA DEVAULT,

    Plaintiff,

v.                                              Case No:   6:15-cv-135-Orl-37TBS

HOLLY ISDALE,

    Defendant.

## ORDER

This case comes before the Court on Defendant Holly Isdale's Motion to Compel Discovery and Plaintiff's Response and Opposition to Defendant's Motion to Compel Discovery (Docs. 49, 51).   This is Defendant's second motion to compel information in response to the same requests for production (Doc. 36).   I denied the first motion, finding that Plaintiff had not waived the work product or attorney-client privileges (Doc. 40). Defendant objected to my ruling in-so-far as it concerned invoices rendered to Plaintiff by the Baker & Hostetler LLP law firm (Doc. 43).   But that issue was not presented in the original motion and therefore, the district judge overruled the objections.   Defendant was given an opportunity to file another motion, addressing the invoices, which she has done, and the issue is now ripe for decision (Docs. 47, 49).

Defendant Holly Isdale is an attorney admitted to the New York State Bar, and the founder and principal of a wealth management company (Doc. 1, ¶¶ 13-14).   In 2011 she was engaged by a privately held corporation (the "Company") to conduct an optional Estate Review Program ("Program") for its shareholders (Doc. 36 at 1).   For those shareholders who wished to participate, Defendant agreed to provide a comprehensive

review of their financial picture, including estate, financial, and insurance planning (Id.). Defendant promised the shareholders that the information they gave her would be "confidential and will not be shared with anyone unless you specifically agree to share that information ... I will not share information among family members without your prior consent."  (Doc. 2-1 at 1-2 (emphasis in original)).  Plaintiff Megan Costa DeVault and her then husband, Nathan DeVault were shareholders in the Company who participated in the Program (Id.).

Plaintiff and Defendant communicated about legal, professional, financial, and estate planning matters (Doc. 2, ¶¶ 22-24).  Defendant requested and was given confidential and privileged information concerning Plaintiff and Nathan (Id., ¶ 27).  And, Plaintiff authorized Defendant to consult with Plaintiff's attorneys, financial planners, bankers and insurance consultants for purposes of estate and financial planning (Id., ¶ 29).  During this period, Defendant told Plaintiff the Company stock was jointly owned by Plaintiff and Nathan and that re-titling of Plaintiff's portion of the stock was unnecessary (Id., ¶ 33).  Plaintiff relied on this advice and did not re-title her stock (Id., ¶ 34).

In 2013, Plaintiff and Nathan commenced dissolution of marriage proceedings (Doc. 2, ¶ 36).  Plaintiff engaged Baker & Hostetler to represent her in the dissolution of marriage case which was resolved by a marital settlement agreement (Doc. 49-2).  In the agreement, Plaintiff relinquished 204 shares of Company stock to Nathan and the parties agreed that they jointly own 744 additional shares (Doc. 36 at 2).  Plaintiff alleges several reasons for this outcome including that Defendant counseled and represented Nathan adversely to Plaintiff in the dissolution of marriage case, Defendant gave Plaintiff bad financial advice, and Defendant used Plaintiff's confidential information to disparage her (Doc. 2, ¶¶ 37, 47).

Plaintiff's complaint accuses Defendant of breach of contract, breach of fiduciary duty, legal malpractice, and professional negligence (Id.).   Plaintiff's damage claim includes approximately $330,000 in attorney's fees and costs she paid Baker & Hostetler to attempt to remove Defendant from the divorce case, and to defend fraud claims by Nathan which Plaintiff alleges, were supported and counseled by Defendant (Id., ¶¶ 61-63).

In her initial FED. R. CIV. P. 26(a)(1) disclosures, Plaintiff listed her lead divorce attorney as a person who "may have discoverable information related to defendant's conflicted involvement and noncooperation in the divorce litigation between plaintiff and Nathan DeVault as well as the resulting damages to plaintiff." (Doc. 39-1 at 2).   Plaintiff also said Baker & Hostetler's "billing statements and summaries" are documents that may support her computation of damages (Id., at 4).

Before this motion was filed, Plaintiff produced heavily redacted copies of the Baker & Hostetler invoices to Defendant (Doc. 49 at 2).   Defendant complains that due to the redactions, the invoices are almost useless in determining and rebutting that part of Plaintiff's damage claim that is based upon the fees and costs she paid the law firm (Doc. 49 at 2).   After reviewing copies of the redacted invoices, I agree.   Plaintiff maintains that the redactions are warranted to protect attorney-client and work product privileged information (Doc. 51 at 8-13).

Defendant removed the case from state court to this Court based upon the existence of diversity jurisdiction (Doc. 1).   When the Court's jurisdiction is based on diversity, state law controls on the substantive issue of attorney-client privilege and federal law controls on the procedural issue of work product privilege.   Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc., 300 F.R.D. 590, 593 (S.D. Fla. 2014).

Florida's attorney-client privilege is codified in § 90.502, Florida Statutes which states that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client."  § 90.502(2).  "The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys."  Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).  "However, the privilege 'protects only those disclosures necessary to obtain informed legal advice.'"  Genovese v. Provident Life & Accident Ins. Co., 74 So.3d 1064, 1067 (Fla. 2011) (quoting Fisher, 425 U.S. at 403).  The burden of establishing the attorney-client privilege is on the person asserting the privilege.  Lender Processing Servs., Inc. v. Arch Ins. Co., ___ So.3d ___, 2015 WL 1809318, at *5 (Fla. 1st DCA 2015).

"[W]aiver of the attorney-client and work-product privileges is not favored in Florida."  TIG Ins. Corp. of Am. v. Johnson, 799 So.2d 339, 341 (Fla. 4th DCA 2001).  Ordinarily, a client must clearly communicate the intent to waive the attorney-client privilege.  First Union Nat'l Bank of Fla. v. Whitener, 715 So.2d 979, 984 (Fla. 5th DCA 1998).  And when a client does waive the privilege regarding some matter, the waiver is limited in scope to communications concerning that matter.  Alliant Ins. Servs., Inc. v. Riemer Ins. Group, 22 So.3d 779, 781 (Fla. 4th DCA 2009); Courville v. Promedco of Sw. Fla., Inc., 743 So.2d 41 (Fla. 2nd DCA 1999).

Florida law recognizes both explicit and implicit waivers of the attorney-client privilege.  Defendant contends that Plaintiff implicitly waived the privilege with respect to the invoices by including a substantial amount of Baker & Hostetler's fees and costs in her damage claim (Doc. 49 at 4-6).  In Savino v. Luciano, 92 So.2d 817, 819 (Fla. 1957)

(which involved the accountant-client privilege), the Florida Supreme Court explained: "And when a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist, in pretrial discovery proceedings, that the matter is privileged." Id.  Another Florida court said: "If a party 'has injected into the litigation issues going to the very *heart* of the litigation,' such party cannot avoid discovery into such issues by invoking the attorney-client privilege." First S. Baptist Church of Mandarin, Fla., Inc. v. First Nat'l Bank of Amarillo, 610 So.2d 452, 454 (Fla. 1st DCA 1992) (quoting Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165, 168 (Fla. 1st DCA 1983)).

Consistent with this reasoning, in Florida the discovery of an opponent's "legal costs is a matter best left to the sound discretion of the trial court." Anderson Columbia v. Brown, 902 So.2d 838, 841 (Fla. 1st DCA 2005); Mangel v. Bob Dance Dodge, Inc., 739 So.2d 720, 724-25 (Fla. 5th DCA 1999) ("Florida has not yet adopted a hard and fast rule regarding the discovery and admission of opposing counsel's fees.  This reflects the salutary view that the discovery may be justified in some cases but not in others and that it is a matter that should rest within the sound discretion of the trial court.").  So, cases hold that when the issue is attorney's fees, counsel's invoices are discoverable. Essex Builders Grp., Inc. v. Amerisure Ins. Co., No. 6:04-cv-1838-Orl-22JGG, 2007 WL 700851, at *1 (M.D. Fla. Mar. 1, 2007) ("Assuming the billing statements and fee agreement contain privileged information, Essex has impliedly waived the privilege," by seeking to recover its attorney's fees and costs); Ideal Elec. Security Co., Inc. v. Int'l Fidelity Ins. Co., Nos. 96-7169, 96-7186, 129 F.3d 143, 151 (D.C. Cir. 1997) ("As a practical matter,

the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole.").

By including hundreds of thousands of dollars of attorney's fees and costs in her damage claim, Plaintiff implicitly waived the attorney client privilege with respect to the invoices which document those fees and costs. This finding is borne out by an email from Plaintiff's lead divorce attorney to Plaintiff. When asked to estimate the value of the work Baker & Hostetler did which related to Defendant and the Company stock, Plaintiff's lead divorce attorney wrote "Based upon my review of invoices …" (Doc. 49-2). It is not too great a leap to expect Plaintiff's divorce attorney to review the unredacted invoices before he testifies, or that Plaintiff will necessarily use the invoices or a summary of them as proof of her damages. Therefore, Plaintiff has waived the attorney-client privilege with respect to the invoices.

Even if Plaintiff had not waived the attorney-client privilege, Plaintiff has not met her burden of demonstrating that the invoices contain attorney-client privileged information. To the contrary, the invoices I have read do not contain attorney-client privileged information. Before deciding this motion, I directed Plaintiff to submit two sets of the invoices for *in camera* review (Doc. 52). The first set is a copy of the redacted invoices produced to Defendant, the second set is not redacted. Each set of invoices is 190 pages long. In order to sample the invoices, I read the first 81 pages of the unredacted copies and compared them to the copies produced to Defendant. The invoices do not contain confidential communications made in the rendition of legal services by Baker & Hostetler to Plaintiff. Instead, they contain descriptions of work that was being performed by multiple timekeepers. They reference communications between those professionals and Plaintiff, and include general descriptions of the subjects of the

communications. But, the actual contents of the communications are not disclosed. Under Florida law, it has been held that "[t]he hours expended and the rate charged by defense counsel is not information protected by the attorney-client or work product privilege," Anderson Columbia, 902 So.2d at 841-42, and that where legal invoices were "nothing more than a bare accounting of the hours spent and rate charged, along with broadly worded, vague descriptions of the work," they were not attorney-client privileged. Butler v. Harter, 152 So.3d 705, 713 (Fla. 1st DCA 2014). Consequently, in the absence of Plaintiff's implicit waiver, I would still find that attorney-client privilege does not protect the unredacted invoices from disclosure.

Plaintiff argues that even if the invoices are not protected by the attorney-client privilege, they are shielded by the work product privilege which was first recognized in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393 (1947). There, the court said "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." Rule 26(b)(3)(A) and (B) address the privilege and provide:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>    (i) they are otherwise discoverable under Rule 26(b)(1); and
>
>    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal

> theories of a party's attorney or other representative concerning the litigation.

To qualify for work product protection, "the primary motivating purpose behind the creation of the document" must be to aid in possible future litigation. U.S. v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981).[1]  There is no evidence that the subject invoices were prepared for or in anticipation of litigation.  In the absence of such evidence I conclude that the invoices were prepared and delivered so that the law firm could get paid for the work it performed.

Still, if the work product privilege were found to apply to the invoices, then federal courts in this circuit recognize implied waiver of the privilege. Stern v. O'Quinn, 253 F.R.D. 663, 676 (S.D. Fla. 2008) ("Under this doctrine, a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense."). For the reasons already explained, all three requirements are satisfied in this case.  This is also a fairness issue.  As the court in Stern explained, "it is simply not fair to allow a party to wield the work-product protection as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any Achilles heels." Id.  I do note however, that the doctrine of waiver is only applicable to fact, as opposed to opinion work product.  MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 624 (Fla. S.D. Fla. 2013).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the court held that decisions of the Fifth Circuit Court of Appeal that existed on September 30, 1981, and that were handed down prior to the close of business that day, are binding precedent in the Eleventh Circuit.

Even if Plaintiff had not implicitly waived the work product privilege I would find that the unredacted invoices would still be discoverable pursuant to Rule 26(b)(3) because "they are otherwise discoverable under Rule 26(b)(1)," and Defendant has shown that she "has substantial need for the materials to prepare [her] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Without the unredacted invoices Defendant cannot effectively defend Plaintiff's damage claim because she will have no way of knowing whether reimbursement is sought for work truly linked to her alleged wrongdoing; she will be unable to discern the reasonableness of the fees and costs claimed; and she will be unable to effectively cross examine Plaintiff's witnesses.

For these reasons, the motion to compel is **GRANTED** with one caveat.  Plaintiff shall produce unredacted copies of the Baker & Hostetler invoices to Defendant within 14 days from the rendition of this Order provided however, if Plaintiff believes in good faith that any of the invoices contain her attorney's "mental impressions, conclusions, opinions, or legal theories … concerning the [dissolution of marriage] litigation," then those entries may still be redacted, so long as a detailed privilege log is provided to Defendant. Plaintiff is not required to provide a more detailed privilege log of the invoices unless she asserts opinion work product privilege with respect to any of the entries.  The Court will retain for the time being, the copies of invoices submitted for *in camera* review in the event they are needed.  Once there no longer appears to be a need for the invoices, they will be shredded.

**DONE** and **ORDERED** in Orlando, Florida on January 4, 2016.

*signature*

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record