**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MEGAN COSTA DEVAULT,

    Plaintiff,

v.                                                           Case No. 6:15-cv-135-Orl-37TBS

HOLLY ISDALE,

    Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant Holly Isdale's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 54), filed December 31, 2015; and

2. Plaintiff's Response and Opposition to Defendant's Motion for Summary Judgment (Doc. 62), filed February 1, 2016.

Upon consideration, the Court finds that the Motion is due to be denied.

**BACKGROUND**

In April 2011, Bush Brothers & Company ("**Bush Brothers**") engaged Wealthaven, LLC ("**Wealthaven**") to conduct optional estate review programs ("**Optional Reviews**") for its shareholders. (Doc. 54-1, p. 2.) Holly Isdale ("**Defendant**") is an attorney and agent of Wealthaven, and she conducted the Optional Reviews for Bush Brothers. (*Id.*) Defendant sent the Bush Brothers shareholders a letter explaining the Optional Reviews, advising that the Optional Reviews would be free of charge, and providing her contact information for those interested in participating in an Optional Review ("**Letter**"). (Doc. 62-2, pp. 2–4.) The Letter indicated that any information the shareholders provided

Defendant would be confidential. (*Id.* at 2.)

In June 2011, Megan Costa DeVault ("**Plaintiff**") and her former husband, Nathan DeVault ("**Nathan**")—owners of Bush Brothers stock ("**Shares**"), which Shares were titled in Nathan's name—elected to participate in an Optional Review with Defendant. (Doc. 54-2, pp. 13–14; Doc. 62-1, pp. 4–5; Doc. 62-5, pp. 4, 17). Plaintiff represents that they made the decision to participate in the Optional Review based on Defendant's assurance that she was "acting both in the capacity as [Plaintiff's] attorney and financial fiduciary." (Doc. 62-1, p. 4.)

Plaintiff and Nathan provided Defendant with information—including information regarding Plaintiff's partnership agreement with her law firm, Plaintiff's 401K, Plaintiff's mother's privately-held company, joint financial accounts, and information regarding the titling and ownership of the Shares ("**Information**")—that Defendant used to create an estate review report in November 2011 ("**Report**"). (Doc. 62-7, p. 1.) The Report contained observations about and gave recommendations regarding the couple's estate, financial, and insurance planning matters. (*Id.*) Following issuance of the Report, Plaintiff, Nathan, and Defendant discussed the transfer of Shares into both Nathan and Plaintiff's names to reflect their intent that the Shares were marital property ("**Title Plan**"). (Doc. 62-1, pp. 5–6; Doc. 62-2, pp. 6–10.) The Title Plan was effectuated in December 2012. (Doc. 62-1, p. 6.)

On March 8, 2013, Plaintiff filed for divorce from Nathan ("**Divorce Proceedings**"). (*Id.* at 41.) In the Divorce Proceedings, Plaintiff was represented by John Foster ("**Foster**") and Nathan was represented by Keersten Martinez ("**Martinez**"). (*See* Doc. 62-2, p. 60; Doc. 54-7, p. 2.) On March 22, 2013, Nathan introduced Defendant to

2

Martinez by e-mail, indicating to Martinez that Defendant could be "a tremendous resource to [them] as [they] figure[d] out how to handle the issue of the [Bush Brothers'] stock" ["**Shares Issue**"] in the Divorce Proceedings, and that Defendant had "some additional information regarding [Plaintiff] that . . . [Martinez] [would] find very useful." (Doc. 54-1, p. 5.)

On March 29, 2013, Defendant spoke to Martinez about the Divorce Proceedings and the Share Issue ("**Conversation**"), and the following day she sent an e-mail summary of the Conversation to Nathan ("**E-Mail**"). (*Id.* at 2, 7.) Nathan, Defendant, and Martinez had several subsequent e-mail communications through which Nathan notified Defendant and Martinez that he intended to challenge the validity of the joint-status of the Shares. (*Id.* at 3, 8–12.) Indeed, in his April 8, 2013 response to Plaintiff's petition for divorce, Nathan raised a fraud defense regarding the Title Plan, suggesting that Plaintiff obtained the transfer of Shares into both names "through fraud, duress, coercion, and deception" and representing that the Shares were Nathan's non-marital property ("**Fraud Defense**"). (Doc. 62-2, p. 47.)

Due to Defendant's inadvertent disclosure of the E-Mail on March 29, 2013, Plaintiff learned that Defendant was assisting Nathan and Martinez in the Divorce Proceedings.[1] (Doc. 62-1, p. 7.) By way of an April 11, 2013 letter, Foster: (1) noticed Defendant that—to the extent Plaintiff was a former client—her representation of Nathan in connection with the Divorce Proceedings was in breach of her fiduciary duties and

---

[1] In the past, Nathan worked for Plaintiff's mother's company ("**Old Work**"). (Doc. 62-1, p. 7.) Defendant sent the E-Mail to Nathan's Old Work e-mail address, which Plaintiff's mother could and did access. (*Id.*) Defendant and Nathan both notified Plaintiff that the E-Mail was inadvertently disclosed and contained information subject to the attorney-client privilege. (Doc. 62-2, pp. 56–57.)

3

violative of the Florida Rules of Professional Conduct; and (2) demanded that Defendant cease and desist her representation of Nathan. (Doc. 62-2, pp. 59–60.)

On March 26, 2014, Plaintiff and Nathan entered into a Marital Settlement Agreement ("**MSA**"). (Doc. 62-3, pp. 11–54.) As memorialized by the MSA, Plaintiff and Nathan divided their 744 Shares in the following manner: (1) Nathan received 372 of the Shares to be titled in his sole name; (2) Plaintiff received 168 of the Shares to be titled in her sole name—90 of which were redeemed by Bush Brothers ("**Redeemed Stock**") and 78 of which were specifically earmarked for child support; and (3) 204 of the Shares were distributed into an irrevocable trust for the benefit of Plaintiff and Nathan's two minor children ("**Children's Trust**"). (*Id.* at 18–21; Doc. 62-6, p. 46.) The state court approved the MSA and entered a Final Judgment of Dissolution of Marriage on April 2, 2014. (Doc. 62-3, pp. 2–10.)

Defendant subsequently assisted Nathan in, *inter alia*, acquiring the Redeemed Shares and distributing them in the "Nathan E. DeVault Trust." (Doc. 62-4, pp. 4–5.)

Plaintiff participated in the Optional Review under the assumption that: (1) the Letter constituted a valid contract that obligated Defendant to keep Plaintiff's Information confidential; and (2) she and Defendant were engaged in a fiduciary relationship and that Defendant would not act against Plaintiff's interests. (*See generally*, Doc. 62-1.) Plaintiff contends that Defendant breached her fiduciary duties by: (1) assisting Nathan in the Divorce Proceedings, particularly on the Fraud Defense; (2) disclosing privileged information; and (3) providing deficient financial advice to Plaintiff, particularly with respect to the Title Plan ("**Breaches & Negligence**"). (*See generally*, *id.*) She further contends that the Breaches & Negligence caused her the following damages: (1) over

$1,300,000.00 in loss as a result of the unequal distribution of the Shares; and (2) an additional several hundred-thousand dollars to address the issues raised by Defendant's Breaches & Negligence ("**Damages**"). (Doc. 62-8, pp. 4, 8; Doc. 62-7, p. 5.)

On December 23, 2014, Plaintiff initiated this action in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, asserting claims against Defendant for: (1) breach of contract ("**Count I**"); (2) breach of fiduciary duty ("**Count II**"); (3) legal malpractice ("**Count III**"); and (4) professional negligence ("**Count IV**"). (Doc. 2.) Defendant removed the action to this Court on the basis of diversity jurisdiction. (Doc. 1; *see also* Doc. 9.) The action is scheduled for a bench trial during the Court's May 2, 2016, trial term. (*See* Doc. 18.) Outstanding for the Court's consideration is Defendant's motion for summary judgment (Doc. 54), which Plaintiff opposes (Doc. 62).

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the

movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.2d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

To prevail on Count I, Plaintiff must first prove the existence of a valid contract. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). "[T]he existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances." *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D. Fla. 2002). Additionally, Counts I, II, III, and IV all require proof that Defendant's actions or

inactions were the proximate cause of Plaintiff's alleged damages. *See In re Alvarez*, 224 F.3d 1273, 1276 (11th Cir. 2000) (recognizing that Florida law requires proximate causation as an element of legal malpractice); *Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293 n.7 (S.D. Fla. 2011) (citing *Doe v. Evans*, 814 So. 2d 370, 380 (Fla. 2002) (instructing that professional malpractice claims shall be evaluated "under the traditional elements of negligence," including proximate causation)); *Walter Int'l Prods., Inc. v. Salinas*, No. 07-20136-CIV, 2009 WL 9113379, at * 4 n.7 (S.D. Fla. Oct. 26, 2009) (explaining that, under Florida law, "causation of damages is a necessary element in order to establish liability for breach of contract"); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (identifying proximate causation as an element of breach of fiduciary duty); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 786 (Fla. 2d DCA 2006) (instructing that damages must result from the breach of contract).

Defendant argues that she is entitled to summary judgment on Count I because Plaintiff cannot prove the existence of a valid contract—specifically, because the Letter does not constitute a contract between Plaintiff and Defendant. (Doc. 54, pp. 8–11.) In support, she points to the Letter—which is unsigned by either party, undated, and contains language to the effect that the Program was optional and free—as evidence that it: (1) was not an "agreement of the minds"; and (2) lacked consideration. (*See* Doc. 2-1.) She also submits Nathan's testimony that there was no written contract between Plaintiff, Nathan, and Defendant. (*See* Doc. 54-6, pp. 3–4.)

In response, Plaintiff submits affirmative evidence—in the form of expert testimony—that the Letter constituted a valid contract and created an attorney-client

relationship between Plaintiff and Defendant. (Doc. 62-8, p. 27.) Plaintiff's evidence creates a question of material fact as to the existence of a contract between Plaintiff and Defendant, precluding the entry of summary judgment as to this element of Count I. *See Keybank Nat'l Ass'n v. Willoughby*, No. 2:09-cv-662-FtM-SPC, 2010 WL 3212086, *3 (M.D. Fla. Aug. 12, 2010) ("If the court finds that there exists a material issue of fact as to whether a contract existed between the parties, summary judgment is inappropriate."); *Consolo v. A.M.K. Corp.*, 344 So. 2d 1285, 1286 (Fla. 3d DCA 1977) (finding that the unresolved issue concerning "whether or not a contract existed between the parties" precluded the entry of summary judgment); *see also Ioselev v. Schilling*, No. 3:10-cv-1091-J-34MCR, 2013 WL 271711, at *2 (M.D. Fla. Jan. 24, 2013) (overruling an objection to a denial of summary judgment because the record contained "conflicting affidavits which create[d] questions of material fact as to the existence of a contract").

Even if the Court finds an issue of fact concerning the existence of a contract, Defendant argues that she is still entitled to summary judgment on all Counts because Plaintiff cannot prove causation. (Doc. 54, pp. 11–20.) In support, Defendant points out an absence of evidence that the alleged Breaches & Negligence caused Plaintiff's alleged Damages. (*See* Doc. 54, pp. 14–15, 17, 19.) She also submits evidence that: (1) she was only involved in the Divorce Proceedings for two weeks ("**Involvement**"); (2) the Information was not intended to be confidential from Nathan—as Plaintiff concedes; (3) the MSA was fair and reasonable; and (4) therefore, her Involvement had no impact on the Divorce Proceedings or Nathan's strategy regarding the Fraud Defense. (*See* Doc. 54-1, pp. 2–3; 54-2, pp. 22–23; Doc. 54-3, pp. 13–14; Doc. 54-7, p. 2)

Plaintiff counters with: (1) affirmative evidence that Defendant played a more active

and longer role in the Divorce Proceedings than Defendant represents; and (2) expert testimony that Defendant's alleged Breaches & Negligence and Involvement caused Plaintiff's Damages. (Doc. 62-1, pp. 8; Doc. 62-2, pp. 12, 62, 66; Doc. 62-8, pp. 5, 35.) Thus, the record reflects a genuine dispute of material fact concerning causation, precluding the issuance of summary judgment. The Court will weigh the evidence during the bench trial and will resolve the remaining disputes at that time.

The Court concludes by addressing Defendant's conclusory argument that Plaintiff lacks standing to assert claims for reimbursement of expenses related to the Children's Trust—specifically, costs associated with the appointment of an independent trustee. (Doc. 54, pp. 20–21.) In her one-paragraph argument, Defendant cites only one case that does not support her standing argument. Thus, the Court declines to grant summary judgment as to this issue.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Holly Isdale's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 54) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 4, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record